Filed 10/14/15  P. v. Adams CA2/2

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION TWO

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>    v.<br><br>JAMES JON ADAMS,<br><br>    Defendant and Appellant. | B261641<br><br>(Los Angeles County<br>Super. Ct. No. GA051127) |

THE COURT:[*]

James Jon Adams (defendant) appeals the decision of the Los Angeles County Superior Court denying his petition, filed under Penal Code section 1026.2,[1] to declare his sanity restored.  Appellant has, via appointed counsel, filed a brief asking this court to conduct an independent review of the record, i.e., a review similar to that required pursuant to *People v. Wende* (1979) 25 Cal.3d 436 (*Wende*), and determine if there are any issues in the record deserving of further briefing.  Defendant has also personally filed a brief asking this court to reverse the trial court's order denying his petition.  We have reviewed the briefs and the record in the trial court.  Based on that review, we affirm the trial court's order.

---

[*]    BOREN, P.J.,              ASHMANN-GERST, J.,              HOFFSTADT, J.

[1]    All further statutory references are to the Penal Code unless otherwise indicated.

## FACTUAL AND PROCEDURAL BACKGROUND

Defendant and L.H. graduated from the same high school in 1984 but were not acquainted. Following their 10-year high school reunion in 1994, defendant wrote several letters to L.H., some of which he dropped off at her church. Some of the letters expressed his love for L.H., while others asserted that L.H's father was having an affair with defendant's ex-wife, and accused L.H. and others of plotting to take away defendant's children. Defendant also made numerous phone calls to L.H.'s home and left threatening voice messages. L.H. reported the letters and calls to the police. Between 1994 and 2002 she moved three times but defendant was able to obtain her new phone number and address each time.

In late 2002, defendant called L.H.'s home and asked where his children were. One day he showed up at the home and was told to leave by L.H.'s husband. At 3:00 a.m. the following day he broke into L.H.'s home, went to her bedroom, and charged towards her and her husband. A struggle ensued and he was forced out of the home. Defendant was standing on the street in front of the home yelling loudly when he was arrested by the police.

Defendant, then 36 years old, was convicted of two counts of assault by means likely to produce great bodily injury (§ 245, subd. (a)(1)), burglary (§ 459), and stalking (§ 646.9, subd. (a)). Defendant raised a defense of not guilty by reason of insanity. He introduced evidence that, prior to the charged incidents, he had been hospitalized due to violent behavior related to delusional beliefs on four occasions: In 1995 he struck his mother; in 1998 he entered his doctor's office with a knife; in 1999 he threatened harm to his father and fought with police officers; and in 2002, after he stopped taking his medication, he was described as '"combative and difficult to handle"' when found living in the woods. The jury credited this evidence and found defendant not guilty by reason of insanity. The trial court committed defendant to Patton State Hospital pursuant to section 1026 for a term not to exceed 17 years, 4 months.

2

By 2009, defendant was participating in outpatient treatment through the Gateways Community Conditional Release Program (CONREP).

On October 25, 2011, he filed an application in superior court for restoration of sanity pursuant to section 1026.2. Defendant waived his statutory right to a jury trial and a court trial took place on December 18th and 19th, 2014.

Defendant called two witnesses. He called Dr. Kory Knapke (Knapke), a forensic psychiatrist who had examined defendant a total of five times. In 2009, Knapke found that defendant's symptoms were in remission. In a report dated May 7, 2012, Knapke concluded that defendant had been restored to sanity. Knapke examined defendant a third time on April 4, 2013; on this occasion, Knapke reached the conclusion that defendant's sanity had *not* been restored because defendant told him that the delusions defendant experienced at the time of the October 2002 crimes involving victim, his ex-wife, and a relationship between his ex-wife and victim's father were based in reality. At that time, Knapke opined, defendant did not appear to be able to "differentiate delusion from reality." In response to the court's inquiries, Knapke testified that it was not clear what caused defendant's "decrease in his insight about his illness." Knapke also testified that defendant was compliant with his medications during this period, and acknowledged that not being able to identify the particular stressor that caused defendant's lapse could be "risky" in terms of looking to the future and considering restoration of sanity. In his final two evaluations of defendant—on April 22, 2014, and December 17, 2014, (the day before the restoration of sanity hearing)—Knapke found that defendant had been restored to sanity.

Defendant testified. He acknowledged that he had a mental illness–schizophrenia paranoid type–for which he takes daily medication. He was aware of the symptoms of his illness, the triggers that caused them, and how to deal with the symptoms. He had no desire to contact the victim of his stalking behavior; described his living arrangements if released; and recounted his intention to continue to seek therapy.

3

The People called Dr. Bentley Hess (Hess), a CONREP outpatient therapist. Hess worked with defendant for the six months prior to the hearing. She testified that defendant had made progress but still became argumentative and defensive as recently as a week ago when discussing his delusions. Hess was concerned that defendant had recently told hospital staff that he had difficulty accepting his mental illness; had not been engaging in treatment; was having difficulty in deciphering between his delusional beliefs and reality; desired to lower his medication; and tended to minimize past events that led to either his arrests or hospitalizations.

During its examination of Knapke, the People also elicited evidence that Dr. Mark Jaffe (Jaffe), a court-appointed doctor, had examined defendant in October 2012. Jaffe had found defendant had not been restored to sanity and still had active symptoms of mental illness and still had the same delusional beliefs and paranoia that contributed to his committing offenses.

The court denied defendant's application, concluding that defendant had failed to meet his burden of proof by a preponderance of the evidence. The court was concerned because it had not been provided with any explanation for what caused Knapke to change his opinion in 2013. The court was looking for an explanation that would give it a "comfort level" that those issues had been addressed, and that it did not need to be concerned that defendant would present a threat to the community.

Defendant filed a timely appeal and we appointed counsel to represent defendant on appeal.

## DISCUSSION

As a threshold matter, we must decide whether to conduct a *Wende* review in this case. *Wende* mandates that the Court of Appeal conduct an independent review of the record for error on appeal of a criminal conviction. (*Wende*, *supra*, 25 Cal.3d at pp. 441–442.) Our Supreme Court has held that no such review is required on appeal of the creation of a conservatorship under the Lanterman-Petris-Short Act (Welf. & Inst. Code, § 5000 et seq.). (*Conservatorship of Ben C.* (2007) 40 Cal.4th 529, 535 (*Ben C.*).)

4

Our sister appellate courts have extended *Ben C.* to appeals of other types of civil commitment, including appeals, like this one, from the denial of a sanity restoration hearing. (*People v. Taylor* (2008) 160 Cal.App.4th 304, 308 [no *Wende* review for mentally disordered offender proceedings]; *People v. Dobson* (2008) 161 Cal.App.4th 1422, 1436 [no *Wende* review of sanity restoration determinations].) Because *Ben C.* deals with a different type of commitment and because we are persuaded that our review of the record appropriately recognizes the importance of the liberty interests at stake, we elect to conduct *Wende* review in this case.

### A. *Legal Standards*

Section 1026.2 provides that a person who has been committed to a state hospital after being found not guilty by reason of insanity (see § 1026), may apply to the superior court for release on the ground that his or her sanity has been restored. Section 1026.2, subdivision (e) establishes a two-step procedure for such an application. The first step is to determine if the person may be placed in an outpatient program for one year. This first step is not involved in defendant's application, because he has been in an outpatient program under supervision of CONREP since 2009. (§ 1026.2, subd. (f).)

In the second step of section 1026.2, subdivision (e), the court "shall have a trial to determine if sanity has been restored, which means the applicant is no longer a danger to the health and safety of others, due to mental defect, disease, or disorder." The defendant-applicant bears the burden of proof by a preponderance of evidence and is entitled to have the matter determined by a jury. (§ 1026.2, subd. (k); *In re Franklin* (1972) 7 Cal.3d 126, 148 (*Franklin*) [interpreting then section 1026a predecessor to section 1026.2].) In order to be restored to sanity, defendant needs to show that he is not likely to cause injury or pain or expose himself or others to injury. (*Franklin*, at p. 145; *People v. Williams* (1988) 198 Cal.App.3d 1476, 1480.)

### B. *Standard of Review*

Because we are reviewing the trial court's determination that the defendant did not carry his burden to prove his sanity and dangerousness by a preponderance of the

5

evidence (§ 1026.2, subd. (k); *Franklin, supra,* 7 Cal.3d at p. 148; *People v. Mapp* (1983) 150 Cal.App.3d 346, 351 [recognizing "inherently civil nature of a section 1026.2 proceeding"]), we will review this determination—like any other determination by a fact finder—for substantial evidence. (See *People v. Rasmuson* (2006) 145 Cal.App.4th 1487, 1504 ["[T]he substantial evidence standard is . . . used in reviewing any disputed factual question, whether it arises at trial or otherwise"]; *Winograd v. American Broadcasting Co.* (1998) 68 Cal.App.4th 624, 632 ["When the trial court has resolved a disputed factual issue, the appellate courts review the ruling according to the substantial evidence rule. If the trial court's resolution of the factual issue is supported by substantial evidence, it must be affirmed"].)

### C. The Contentions in Defendant's Supplemental Brief Lack Merit

In his supplemental brief, defendant makes three arguments as to why the trial court erred in denying his section 1026.2 petition.

First, defendant argues that the verdict was "not supported by a preponderance of the evidence." In this regard, he levels three criticisms. To begin, he urges that we disregard Hess's testimony because CONREP never recommends patients for release. We decline to do so. In this case, Hess's testimony did not reflect any across-the-board policy; to the contrary, Hess provided a detailed explanation for her opinion—namely, that defendant was argumentative, was defensive, minimized the severity of his past transgressions, was not engaging in treatment, and had difficulty accepting his mental illness as recently as a few weeks prior to the court trial.

Further, he argues that the number of medical reports in his favor outnumber the number against him. But this argument puts the quantity of favorable reports over their content. Relatedly, defendant asserts that the trial court's ruling is infirm because his counsel did not introduce the opinion of Dr. Sanjay M. Sahgal (Sahgal), who concluded that defendant was restored to sanity on May 2, 2013 (approximately three weeks after

6

Knapke's unfavorable report) and on March 12, 2014.[2] However, Sahgal's additional reports would not have altered the court's determination. The court rested its ruling in large measure upon its concern that defendant's change in sanity—noted by Knapke in 2013—was never explained and thus could suggest a further risk of relapse or danger. This concern was not sufficiently addressed by the only person who could do so— Knapke. Neither Sahgal report would have allayed this concern.

Second, defendant contends his due process and/or speedy trial rights were violated because the sanity restoration trial was continued indefinitely. Defendant presents no argument. Even if we assume that speedy trial protections apply in this context, any due process or speedy trial claim would, as a threshold matter, be premised upon a showing of prejudice due to the delay. (*People v. DePriest* (2007) 42 Cal.4th 1, 26.)

The record indicates that defendant filed his section 1026.2 petition in October 2011. The court received favorable reports from Sahgal (Jan. 27, 2012) and Knapke (May 7, 2012), followed by unfavorable reports from Jaffe (Dec. 30, 2012) and Knapke (Apr. 11, 2013), and finally two additional favorable reports from Knapke (Apr. 29, 2014, and Dec. 17, 2014). Except on two occasions,[3] the minute orders during that entire period do not disclose the reason for the numerous continuances that occurred, and defendant presents no argument on this issue. Because we cannot presume prejudice, and defendant has not independently established any, his speedy trial/due process claim fails. (*People v. Fernandez* (1999) 70 Cal.App.4th 117, 131.) Defendant has suffered no actual prejudice in any event because an earlier trial would have simply precluded defendant from being able to offer the later, favorable reports from Knapke.

---

[2]    Defendant provided us with Sahgal's 2014 report, but was unable to produce any report from 2013.

[3]    On April 10, 2014, the matter was continued at the request of the defense, and on September 11, 2014, the matter was continued at the request of CONREP.

Lastly, defendant contends that he received ineffective assistance of counsel, that his counsel's ineffectiveness was the reason the petition was denied, and that he is entitled to a new trial with new counsel. (See *Strickland v. Washington* (1984) 466 U.S. 668, 687 (*Strickland*).) *Strickland* requires a showing that, but for counsel's deficient performance, it is reasonably probable that the outcome of the proceeding would be different. (*Ibid.*)

Defendant raises three claims of ineffectiveness, all of which fail under *Strickland*. He argues that his counsel erred in not introducing the favorable Sahgal reports, but it is not reasonably probable that their admission would have lead to a different result because, as noted above, they did not address the trial court's primary reason for denying defendant's petition. Defendant asserts that his counsel failed to exclude Hess from the courtroom during defendant's testimony and failed to cross-examine the witnesses properly, but our review of the transcripts shows no inadequate performance by defendant's counsel in either direct examination of defendant and Knapke, or competent cross-examination of the state's expert witness, Hess.

## DISPOSITION

The trial court's order denying defendant's petition is affirmed.

NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS.